UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| COREY CUSACK, individually,<br><br>Plaintiff,<br><br>v.<br><br>BENDPAK, INC., a foreign corporation,<br><br>Defendant. | Case No. 4:17-cv-00003-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

There are numerous motions before the Court. On November 30, 2017, Defendant Bendpak, Inc. ("Bendpak") filed its First Motion in Limine Precluding Evidence of Subsequent Remedial Measures. Dkt. 29. On December 8, 2017, Plaintiff Corey Cusack filed a Motion to Amend/Correct Complaint. Dkt. 32. On December 14, 2017, Cusack filed a Motion for Partial Summary Judgment. Dkt. 37. The Court then set the Motions for oral argument on March 15, 2017.

Once oral argument was set, but before it took place, Cusack filed a supplement to his response regarding Bendpak's Motion in Limine (Dkt. 49) and the affidavit of Joel Beck in support of his Motion to Amend/Correct Complaint (Dkt. 50). Bendpak then filed a Motion to Strike Beck's affidavit. Dkt 52. This caused Joel Beck to file a new affidavit (Dkt. 53) correcting errors in his prior affidavit. Bendpak indicated at oral

argument that this would most likely remedy its concerns.[1] After oral argument, the Court took the Motions under advisement and now issues the following decision.

## II. BACKGROUND[2]

This matter involves a car lift accessory part that fell and injured Cusack. In February, 2011, Corey's Auto Works, LLC, an automobile service and mechanical shop, owned and operated by Corey Cusack, purchased a BendPak Car Lift System and two RJ-7 Rolling Jacks.[3]

On or about June 27, 2014, while Cusack was working at his garage, he realized that one of the Rolling Jacks on the BendPak Car Lift was out of proper position and went over to correct the problem. It is unclear how, but one of the Rolling Jacks fell off the Car Lift System and landed on Cusack's foot, crushing it. Cusack claims that the accessory part, a RJ-7 Rolling Jack, was defective. Cusack asserts he sustained various injuries and damages as a result. Cusack alleges that Bendpak knew the Rolling Jacks posed a risk of serious harm or injury but did nothing about it.

---

[1] On March 19, 2018, Bendpak officially withdrew its Motion to Strike. Dkt. 56. The Court only mentions the Motion to Strike because Joel Beck's affidavit supports the Motion to Amend—and the Court takes up that Motion in this Decision.

[2] There are specific facts that are applicable only to individual Motions that the Court will address throughout this decision. This summary gives background on the lawsuit as a whole.

[3] In the simplest terms, the Bendpak Car Lift System consists of two ramps supported by four metal posts. When a vehicle drives onto the ramps, the Car Lift hydraulically hoists the vehicle into the air. A mechanic can then work on the car with greater ease. The Rolling Jacks run perpendicular to the ramps, are placed on individual tracks just inside the ramps, and are used to further raise the vehicle if desired (for work such as tire changes or brake jobs, which could not be done with the tires resting on the ramps).

# III. DISCUSSION

## A. Motion in Limine

### 1. Background

On November 30, 2017, Bendpak filed its Motion in Limine seeking to preclude evidence of remedial measures. Federal Rule of Evidence 407 precludes evidence of subsequent remedial repairs and Federal Rule of Evidence 403 precludes evidence that's probative value is substantially outweighed by its prejudicial and confusing effect. Bendpak added a secondary safety bracket to the Rolling Jack after Cusack purchased the jack but before the accident. The first issue is whether the addition of the secondary safety bracket is a subsequent remedial repair. The second issue is whether the probative value of evidence of the secondary safety bracket is substantially outweighed by any prejudicial and confusing effect.

### 2. Legal Standard

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *Miller v. Lemhi Cty.,* No. 4:15-CV-00156-DCN, 2018 WL 1144970, at *1 (D. Idaho Mar. 2, 2018) (citing *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002)). "The term 'in limine' means 'at the outset.' A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting Black's Law Dictionary 803 (8th ed. 2004)).

Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989) (citation omitted), "a district court has discretion in ruling on a motion in limine," *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and, therefore, "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

**3. Analysis**

In this case, Cusack purchased the Bendpak Car Lift and the Rolling Jacks in 2011. In 2012, Bendpak added a secondary safety bracket to new Rolling Jacks.[4] In 2014, Cusack sustained his injuries. Bendpak now seeks to exclude evidence of it adding this additional safety bracket in 2012 to all newly manufactured Rolling Jacks.

In its Motion, Bendpak alleges that it added this secondary bracket as an innovative upgrade to further improve the safety and stability of the product but—importantly—it did not add it because the RJ-7 was dangerous or flawed.[5] Bendpak avows that the original design (which Cusack purchased) was safe. Bendpak did not send

---

[4] This secondary safety bracket is a piece of angle iron placed on the Rolling Jack base to keep it from coming off the rails that run along the ramps of the Car Lift System.

[5] Bendpak clarified at oral argument that it did in fact add the bracket in response to an incident, but maintains it did so because the individual involved was a valued customer and Bendpak was striving to improve its business, not because this accident somehow alerted it to a major defect worthy of repair or recall. Bendpak included the bracket on all RJ-7's manufactured after 2012.

MEMORANDUM DECISION AND ORDER - 4

out a recall or any advisory guidelines regarding prior Rolling Jacks after adding the secondary safety bracket to new Rolling Jacks.

Cusack believes that the addition of this secondary safety bracket is evidence of known deficiencies in the RJ-7 Jacks and that Bendpak should have provided the additional bracket to customers who had purchased earlier models, or at the very least, Bendpak should have alerted customers who had earlier models about potential dangers in the product after it became aware of them.

Federal Rules of Evidence 407 states:

When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:

- negligence;
- culpable conduct;
- a defect in a product or its design; or
- a need for a warning or instruction.

But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures.

As Cusack points out, the purpose of this rule is to prevent the introduction of remedial measures taken after injuries occur, not prior to them. Here, Bendpak introduced the safety bracket in 2012—almost two years before Cusack's 2014 injury. It appears that Rule 407 does not apply under these circumstances.

Bendpak readily admits that the Ninth Circuit has never ruled on the particular timing issue present in this case, but argues that other circuits have precluded post-manufacturer, pre-accident remedial measures under Rule 407 and that this Court should

follow suit. Taking a "policy consideration" standpoint, Bendpak urges the Court to exclude this evidence because allowing it could disincentivize businesses from making general improvements to their products for fear of future repercussions and/or litigation.

Bendpak raises a valid concern; however, without any relevant or binding authority, the Court cannot look past the plain language of the Rule. Rule 407 provides that a party cannot introduce evidence of remedial measures that would have made *an earlier injury* or harm less likely to occur.

At oral argument, Bendpak argued that the secondary safety bracket was in fact a subsequent remedial measure to an earlier injury—just not the injury in this case. Because Bendpak added the bracket after a prior incident and litigation, it maintains the bracket is "subsequent to an earlier injury" and the Court must exclude it in this litigation. While creative, this interpretation misses the mark.

Bendpak postures that there is no case law that suggests Rule 407 only applies to the particular claimant and injury in the current lawsuit. The Court disagrees with this posturing. There is no case law that suggests remedial measures should be excluded from any and all future litigation involving a defendant who remedied a product. Although not spelled out exactly in the fashion Bendpak is suggesting, this Court has held that the remedial measures doctrine applies only to the current cause of action. In *Blumhorst v. Pierce Manufacturing, Inc.,* the Court faced a similar request by the defendants and concluded that timing of the remedial measures was crucial (i.e. it needed to be an earlier injury) and that the context of the remedial measure was important (the injury needed to

MEMORANDUM DECISION AND ORDER - 6

occur in the present case). No. 4:10-CV-00573-REB, 2013 WL 12139352, at *2 (D. Idaho Feb. 14, 2013). The court explained,

> Here, the "subsequent" measures in question were subsequent only to the original manufacture and sale of the fire truck . . . . They were not subsequent measures taken *after Plaintiff's accident*; indeed, the new warnings or instructions . . . came about approximately two years before Plaintiff's accident. Had these warnings/instructions come into existence *after Plaintiffs accident*, FRE 407 might apply to preclude their admission to show [defendant's] negligence. That simply is not the case here.

*Id.* (Emphasis added). Any remedial measures taken after an event, which would have made the event less likely to occur, are not admissible under Rule 407 to prove culpable conduct *with regard to the event at issue. See, e.g.*, In re Aircrash in Bali, Indonesia, 871 F.2d 812, 816 (9th Cir. 1989). More examples or analysis regarding whether or not a party can rely on injuries outside the pending case as the basis for a Rule 407 ruling are unnecessary because there is another way to achieve the result Bendpak seeks.

Cusack, in his Notice of Additional Authority (Dkt. 49), points the Court to Idaho Code section 6-1406(1), which provides:

> Evidence of changes in (a) a product's design, (b) warnings or instructions concerning the product, (c) technological feasibility, (d) "state of the art," or (e) the custom of the product seller's industry or business, *occurring after the product was manufactured and delivered to its first purchaser* or lessee who was not engaged in the business of either selling such products or using them as component parts of another product to be sold, *is not admissible for the purpose of proving that the product was defective in design or that a warning or instruction should have accompanied the product at the time of manufacture. The provisions of this section shall not relieve the product seller of any duty to warn of known defects discovered after the product was designed and manufactured.*

(Emphasis added). Cusack has alleged from the beginning that Bendpak knew its original product was dangerous and should have more adequately warned users of potential

hazards. Additionally, Cusack asserts that the whole reason for the addition of the secondary safety bracket was in response to an injury, and as a result Bendpak was on notice of real world injuries, and under a duty to warn customers. Whether that is accurate remains to be determined, but section 6-1406(1) would allow evidence of the additional safety bracket to support a "failure to warn" (of discovered post-manufacturing defects) argument. However, to the extent that Cusack has alleged any negligence or defect in the original RJ-7 product—or that Bendpak should have sent out certain warnings with the original product—this section forecloses use of the secondary bracket evidence for that type of argument.[6]

The Idaho Statute is the appropriate way to address Bendpak's Motion rather than Rule 407.

Finally, Bendpak argues that under Federal Rule of Evidence 403, the Court should not allow this evidence because it is prejudicial and will confuse the jury.

Federal Rules of Evidence 403 states:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

Because the Court will only allow Cusack to proffer this evidence in support of his theory that Bendpak failed to properly warn customers, prejudice or confusion will not result. Bendpak will have an opportunity to put forth its theory and testimony that the

---

[6] The statute further outlines that this kind of evidence is admissible for impeachment, ownership, control, and certain other purposes. *See* Idaho Code § 6-1406(2).

secondary safety bracket was innovation for further safety and to appease a favored customer, but not the result of any dangerous flaw or defect that would have required notice or warnings to customers regarding past products.

In conclusion, the Court will not read something into Rule 407 that is not there, especially considering that the Ninth Circuit has not taken a position on the issue of post-manufacturer, pre-accident remedial measures. The Rule is clear. Plaintiff's injury must pre-date the remedial measures. Here, it does not. The Court also will not consider past litigation as the basis for an "earlier injury". It must be an earlier injury *in the current case.* Cusack's injury occurred after Bendpak's addition of the secondary safety bracket. Therefore, Rule 407 does not apply. Nevertheless, Idaho Code section 6-1406 largely precludes this evidence. Consistent with that statute, Cusack will not be allowed to introduce evidence of Bendpak's adding of the secondary safety bracket for purposes of negligence, defect etc., but will be able to introduce it under a "failure to warn" theory. Bendpak's Motion is therefore GRANTED in PART and DENIED in Part.

B.  **Motion to Amend Complaint**

1. **Background**

On December 8, 2017, Cusack filed a Motion to Amend Complaint. Dkt. 32. In this motion, Cusack seeks to add a claim for punitive damages and for the Court to allow Cusack to remove all Defendants except Bendpak from the case caption and factual allegations of the Complaint.

## 2. Legal Standard

"Punitive damages are not favored in the law and should be awarded in only the most unusual and compelling circumstances." *Seiniger Law Office, P.A. v. N. Pac. Ins. Co.,* 178 P.3d 606, 614 (2008). The decision to allow a plaintiff to amend a complaint to allege punitive damages rests in the sound discretion of the trial court. *See Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 224 P.3d 1068, 1088 (Idaho 2009).

Punitive damages are governed by Idaho Code section 6–1604(2):

In all civil actions in which punitive damages are permitted, no claim for damages shall be filed containing a prayer for relief seeking punitive damages. However, a party may, pursuant to a pretrial motion and after hearing before the court, amend the pleadings to include a prayer for relief seeking punitive damages. The court shall allow the motion to amend the pleadings if, after weighing the evidence presented, the court concludes that, the moving party has established at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages.

A party seeking punitive damages at trial "must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." Idaho Code § 6–1604(1). At the Motion to Amend stage, the plaintiff must therefore "establish *a reasonable likelihood* [he] could prove by [clear and convincing evidence] that [the defendant] acted oppressively, fraudulently, wantonly, maliciously or outrageously." *Vendelin v. Costco Wholesale Corp.*, 95 P.3d 34, 41 (Idaho 2004) (emphasis added).

In *Cheney v. Palos Verdes Investment Corp.*, 665 P.2d 661 (Idaho 1983), the Idaho Supreme Court described the circumstances necessary to justify punitive damages:

> An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that be termed "malice, oppression, fraud or gross negligence"; "malice, oppression, wantonness"; or simply "deliberate or willful."

*Id.* at 669 (internal citations omitted), *abrogated on other grounds recognized by Brown v. Matthews Mortuary, Inc.*, 801 P.2d 37 (Idaho 1990). Simple negligence does not support an award of punitive damages. *Inland Grp. of Companies, Inc. v. Providence Wash. Ins. Co.*, 985 P.2d 674, 684 (1999). Plaintiff must be "able to establish the requisite intersection of two factors: a bad act and a bad state of mind," *Hall v. Farmers Alliance Mut. Ins. Co.*, 179 P.3d 276, 282 (Idaho 2008).

### 3. Analysis

The totality of the evidence presented by Cusack would not support a jury verdict for punitive damages. Cusack alleges that Bendpak knew its Rolling Jacks could fall off the Car Lift System and did nothing about it and that this amounts to "oppressive[], fraudulent[], wanton[], malicious[] or outrageous[]" conduct worthy of punitive damages. Cusack gives two examples to support this Claim. First, he alleges that because Bendpak placed caution decals on the Rolling Jacks from the beginning, it was aware of potential hazards. And second, because Bendpak has had prior related lawsuits, it actually *knew* that the product could injure people and still chose to do nothing about it.

a. *Caution Decals*

In response to Cusack's assertion that by placing decals on their products Bendpak knew of inherent problems, Bendpak counters that it is an industry leader and that its designs, warnings, and safety features are above industry standards and that the decals were simply part of the regular course of business.

Cusack replies that being an industry leader and having above industry standards are irrelevant to the discussion. The Court agrees to a certain extent. While assertions of leading an industry may be a subjective metric, here, Bendpak points to certain safety features that it has implemented which none of its competitors have. This would support Bendpak's position that it has not "deviated from reasonable standards of conduct" as required to support an award of punitive damages and that placing these decals was good business, not a prediction of future harm.

Additionally, it is difficult for the Court to find that putting warnings on the Rolling Jacks was somehow indicative of known problems. Consumer regulations require companies to place various warnings or cautions on products, but in so doing, a company is not admitting for liability purposes that its products are unsafe or harmful—rather, these are general warnings concerning proper use. This argument is unavailing and does not rise to the level of a bad act or bad state of mind.

   b. *Previous Lawsuits*

Next, Cusack highlights numerous lawsuits involving Rolling Jacks and concludes that Bendpak knows about defects and refuses to fix them—thus constituting outrageous conduct.

MEMORANDUM DECISION AND ORDER - 12

Bendpak does not deny the existence of these lawsuits, but distinguishes them from the facts in this case. Bendpak provides analysis (the Court will only give a brief explanation here) for why the four lawsuits raised by Cusack are inapplicable to this case.

With regard to the first lawsuit, a 2010 case (*Alan Buchanan v. Bendpak*), Bendpak argues that while a Rolling Jack was the cause of injury, it was a different model than the one at issue in this case.

In the second, a 2012 lawsuit (*William Coffman v. Bendpak*), it was determined that the plaintiff had misused the equipment and was contributorily negligent.

With regard to the third, a 2017 lawsuit (*Casey Gordon v. Bendpak*), similar to *Buchanan*, Bendpak asserts a different model Rolling Jack was at issue.[7]

Finally, Bendpak recently learned of a suit in the early stages of litigation (*Michael Graceffa v. Nestor et al.*), which implicates Bendpak to some degree. From Bendpak's research, it believes that an error with delivery and installation occurred in that case and that it will not face any liability.

Bendpak claims that none of these cases, though somewhat related, support a finding that RJ-7 Rolling Jacks are systematically injuring people and that it should be

---

[7] Cusack believes this is a distinction without a difference as the model at issue in that case is identical to the RJ-7, but rated for less weight. This too though could be a fallacy. Even if it is the same "model," if its purpose, function, or weight rating is different, the Court cannot just assume that the other model would be subject to the same negative outcome (i.e. an injury) in the same situation. More importantly, the facts in the 2017 lawsuit and the recent Graceffa case appear to post-date the injury in this case so they are not relevant to any argument that Bendpak had a bad act and bad state of mind in 2014.

MEMORANDUM DECISION AND ORDER - 13

aware of this fact. These cases, according to Bendpak, are distinguishable, or at the very least, involve user error, which does not necessarily implicate Bendpak.

Using other litigation to indicate that Bendpak knows the RJ-7 Rolling Jack is dangerous and continues to disregard that fact is something of a reach. This product weighs 350 pounds, is used in connection with another large product, the Car Lift System, and its purpose is to lift automobiles off the ground for maintenance. It seems obvious by its nature that this product could cause harm if not properly used. So even though there have been lawsuits, every lawsuit is so fact specific it is difficult to say the mere existence of lawsuits is enough to prove a bad act or, more particularly, a bad state of mind as required to prove punitive damages.

In conclusion, under the reasonable likelihood standard, Cusack has not met his burden with regard to punitive damages. He failed to establish with a reasonable likelihood that he could show at trial that Bendpak "acted oppressively, fraudulently, wantonly, maliciously or outrageously." *Vendelin,* 95 P.3d at 41. Nor has he established the "requisite intersection of two factors: a bad act and a bad state of mind." *Hall,* 179 P.3d at 282.

In the exercise of its discretion, the Court denies without prejudice Cusack's request to amend to add a claim for punitive damages. If appropriate, following evidence submitted at trial, Cusack can renew this Motion. *See e.g., Murray v. City of Bonners Ferry,* No. 2:15-CV-00081-REB, 2017 WL 4318738, at *18 (D. Idaho Sept. 28, 2017); *Tomlinson Black N. Idaho Inc. v. Kirk-Hughes,* No. CV 06-118-EJL-LMB, 2008 WL 11349895, at *4 (D. Idaho Apr. 1, 2008).

Finally, in the second part of this Motion to Amend, Cusack requests that the Court remove all defendants except Bendpak from the case caption and contents of the Complaint. The Court has already dismissed all defendants except Bendpak in this matter and Bendpak has not indicated any opposition to this portion of the Motion. Therefore, the same is GRANTED. The Court will allow Cusack to amend his Complaint so that only Cusack and Bendpak will remain as named parties. Connected with this request is the final Motion at issue—Cusack's Motion for Partial Summary Judgment—which the Court turns to next.

### A. Motion for Partial Summary Judgment

#### 1. Background

Cusack moves for partial summary judgment, asking the Court to rule as a matter of law that contributory negligence is not an affirmative defense available to Bendpak.

#### 2. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, this Court must "view[] the facts in the non-moving party's favor." *Id.*

To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the

respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, this Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

### 3. Analysis

In his briefing, Cusack asked the Court to rule as a matter of law that contributory negligence is not an affirmative defense available to Bendpak generally, but specifically against third parties. Bendpak responded that it only intends to bring this theory against Cusack himself, not any third parties. Cusack replied and admitted that there are disputed facts concerning misuse on Cusack's part. Cusack then changed his request slightly and asked the Court to grant an order stating that only Cusack and Bendpak can be found negligent in this action.

At oral argument, the parties fleshed out this issue and explained that there are indications that another unknown individual played a role in the underlying accident. Cusack was working in his commercial garage on June 27, 2014, and noticed that the RJ-7 Rolling Jack was out of place on a Bendpak Car Lift System that was already in a hoisted position. Nobody knows who drove the vehicle on the lift system or who
MEMORANDUM DECISION AND ORDER - 16

positioned the Rolling Jacks. It is undisputed that Cusack was not that individual. However, it is also undisputed that Cusack did not allow anyone except employees to drive vehicles onto the lifts or operate the Rolling Jacks. This means then that while this individual's identity is unknown, it could only have been one of Cusack's employees.

Bendpak wants to allow in this evidence of a phantom driver/operator.[8] Cusack does not necessary want to preclude it, he simply does not want anyone other than Cusack and Bendpak on the verdict form for liability purposes. The parties seem relatively in agreement on this point and the Court finds that such is appropriate.[9] Even if this phantom driver/operator is liable in some way, as one of Cusack's employees, any liability will be imputed to Cusack—thus, even under this theory, only Cusack and Bendpak can be liable parties in this action.

The Court will allow proper testimony on this issue, but there will be no "empty chairs" on the verdict form. Contributory negligence remains an affirmative defense available to Bendpak, but only in relation to Cusack. Cusack will be responsible for the

---

[8] Following oral argument, Bendpak submitted supplemental material for the Court's consideration. Included was Bendpak's Answer to the Complaint (which Bendpak filed in State Court) that confirms that it had in fact alleged comparative/contributory liability as an affirmative defense. Additionally, Bendpak requests that the court take one, or more, of the following actions regarding this Motion: (1) include the phantom driver/operator on the verdict form, (2) give a jury instruction regarding non-claimant liability and damage apportionment, or (3) impute the conduct and negligence of the phantom driver/operator to Cusack. Consistent with the above analysis, the Court will essentially allow options 2 and 3, but will not allow option 1.

[9] The Court will, consistent with Idaho Code section 6-1405, give a jury instruction in regards to non-claimants at fault and the apportionment of liability and subsequent reduction of Plaintiff's damages.

phantom driver/operator's liability as he/she was an employee of Cusack's. The Court will therefore GRANT the Motion consistent with this analysis.

## ORDER

**IT IS ORDERED:**

1. Defendant Bendpak's Motion in Limine (Dkt. 29) is GRANTED IN PART and DENIED IN PART as outlined above. Cusack will not be allowed to introduce evidence of Bendpak's addition of the secondary safety bracket for purposes of negligence, defect etc., but will be able to introduce it under a "failure to warn" theory.

2. Cusack's Motion to Amend/Correct Complaint (Dkt. 32) is GRANTED IN PART and DENIED IN PART as outlined above. The Court will not allow amendment in order to add a claim for punitive damages at this time. The Court will allow Cusack to remove all defendants except Bendpak from the case caption and factual allegations of the Complaint. Plaintiff has fourteen days to file an appropriate Amended Complaint.

3. Cusack's Motion for Partial Summary Judgment (Dkt. 37) is GRANTED. While the Court will allow evidence of the phantom driver/operator's actions, if otherwise admissible, only Cusack and Bendpak can be liable in this case and only their names will be included on the jury verdict form.

4. Bendpak's Motion to Strike (Dkt. 52) has been withdrawn and is deemed MOOT. Dkt. 56.

DATED: April 12, 2018

_____
David C. Nye
U.S. District Court Judge